## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

BROTHERS AND SISTERS IN CHRIST, LLC,     )
                                         )
                Plaintiff,               )
                                         )
v.                                       )     Case No. 4:20-CV-280-NAB
                                         )
ZAZZLE, INC.,                            )
                                         )
                Defendant.               )

## MEMORANDUM AND ORDER[1]

This matter is before the court on Defendant Zazzle, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 8.] Plaintiff Brothers and Sisters in Christ, LLC ("BASIC") filed a Memorandum in Opposition. [Doc. 14.] Defendant filed a Reply Memorandum. [Doc. 18.] For the following reasons, the court will GRANT Defendant's motion.

### I.     Background

Plaintiff BASIC brought this action on February 19, 2020 asserting claims under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* for trademark infringement and dilution, unfair competition, and unfair business practices, and under "the anti-dilution laws of several states; the fair business practices and unfair and deceptive trade practices acts of several states; and the common law." [Doc. 1 ¶¶ 6, 19.] Plaintiff states that it is the owner and user of the trademark "love happens" for use with clothing, has used and advertised its trademark in the clothing industry for years, that competitors, customers, and potential customers know and associate the trademark with BASIC, and that as a result of Plaintiff's use and promotion of the mark, Plaintiff has built up and

---

[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 22.]

owns valuable goodwill that is symbolized by the mark. *Id.* ¶¶ 5, 20-24. Plaintiff alleges that Defendant knew of its trademark, intentionally misled customers and potential customers by using its webpage to advertise and sell trademark infringing clothing that utilized Plaintiff's mark, and sold at least one trademark infringing shirt to a resident of Missouri. *Id.* ¶¶ 8-11, 15, 25-26. Plaintiff alleges that, as a result of Defendant's actions, customers and potential customers are likely to mistakenly attribute Defendant's business and products with its own, that the public and customers are likely to be confused or deceived, and that Plaintiff's brand has been irreparably damaged. *Id.* ¶¶ 15-18, 27. Plaintiff seeks injunctive relief, monetary damages, Defendant's profits from trademark infringing sales, punitive damages, and attorneys' fees and costs. *Id.* ¶ 19.

## II.    Standard of Review

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts 'to support a reasonable inference that the defendant can be subjected to jurisdiction within the state.'" *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)). "Although the evidentiary showing required at the prima facie stage is minimal, the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion." *Id.* (internal citations and quotations omitted). The evidence must be viewed in the light most favorable to the plaintiff and all factual conflicts are resolved in its favor in deciding whether the plaintiff made the requisite showing. *Id.* (citing *Digi–Tel Holdings, Inc. v. Proteq Telecomms. (DTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996)). "If jurisdiction is controverted, the plaintiff has the burden of proving facts supporting personal jurisdiction." *Coen v. Coen*, 509 F.3d 900, 904 (8th Cir. 2007) (citing *Dever*, 380 F.3d at 1072).

In this case, federal subject matter jurisdiction is predicated upon a federal statute. "Where a federal court's subject matter jurisdiction over a case arises from the existence of a federal question, the court may exercise personal jurisdiction over a defendant if the plaintiff has properly served the defendant with process under the forum's long arm statute and if the defendant has sufficient contacts with the forum state to satisfy procedural due process." *Enter. Rent-A-Car Co., v. U-Haul Int'l*, 327 F. Supp. 2d 1032, 1036 (E.D. Mo. 2004) (citing *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104-05 (1987)).

"In adopting the long-arm statute, the Missouri legislature 'intended to provide for jurisdiction, within the specific categories enumerated in the statutes [e.g. transacting business or making a contract within the state,] to the full extent permitted by the due process clause.'" *K-V Pharm. Co.*, 648 F.3d at 592 (quoting *State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. 1984) (en banc)). *See also Dairy Farmers of Am. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012) (collecting cases). Because the Missouri long-arm statute is not coextensive with the limits of due process, the analysis of each should be conducted separately. *See Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 593 n.2 (8th Cir. 2011); *see also Andra v. Left Gate Prop. Holding, Inc.*, 453 S.W.3d 216, 225 (Mo. 2015) (en banc) (describing a two-prong test for personal jurisdiction which analyzes the Missouri long-arm statute before considering the defendant had sufficient minimum contacts with the state to satisfy due process). As such, the court examines whether the suit arises out of an activity enumerated by the Missouri long-arm statute before examining whether the Defendant has sufficient minimum contacts with Missouri to due process requirements. *Dairy Farmers of Am.*, 702 F.3d at 475-76.

**III.     Discussion**

Defendant argues that none of the alleged facts of Plaintiff's complaint are sufficient to establish that it can be subjected to jurisdiction within Missouri. [Doc. 8.] More specifically, Defendant asserts that the court cannot exercise general jurisdiction over it because Missouri is neither its place of incorporation nor its principal place of business, and that the court cannot exercise specific jurisdiction based on Plaintiff's allegations because Plaintiff's residence or principal place of business, Plaintiff's counsel's residence, its use of an interactive website to sell goods —without more—, and a single sale of an allegedly trademark-infringing product to a person affiliated with the Plaintiff are insufficient to establish minimum contacts with Missouri. [Doc. 9 at 7-9.] Defendant argues that specific jurisdiction must be based on contacts that the Defendant itself creates within the forum state, rather than contacts created by the Plaintiff or a third party. *Id.* at 9. While Defendant acknowledges that an internet purchase and delivery to a forum state may be sufficient to establish specific jurisdiction under certain circumstances, it contends that such circumstances are not found when a Plaintiff orchestrates an online purchase for the purpose of creating jurisdiction, or where the purchases was a mere result of a unilateral act by a third party. *Id.*

Plaintiff filed several exhibits together with its complaint, which show that an allegedly trademark-infringing t-shirt [Doc. 1-2] was ordered from Defendant in November 2019 [Doc. 1-4] and shipped to Clayton, Missouri [Doc. 1-1]. In response to Defendant's motion to dismiss, Plaintiff argues that federal law does not preclude this court from exercising specific jurisdiction over Defendant on the basis of an infringing sale made to a person associated with a Plaintiff. Plaintiff asserts that this court may exercise specific jurisdiction over Defendant based on the following circumstances: (1) Defendant operates an interactive website which sells goods into Missouri; (2) Defendant's website offered trademark infringing goods into Missouri; (3)

Defendant actually sold trademark infringing goods into Missouri; (4) the State of Missouri has an interest in protecting its local businesses from predatory practices carried out by foreign businesses using the internet; and that (5) "with electronic filing, this District Court is not inconvenient to Defendant." [Doc. 14 at 8-10.]

Plaintiff asserts that Defendant admits that it "operat[es] an interactive website," "has sold other goods into Missouri," "admits the infringing good was purchased from Defendant's website" and "offered the infringing good for sale into Missouri." [Doc. 14 at 4.] Plaintiff argues that such admissions support the exercise of personal jurisdiction by this court because "[o]ffering or selling an infringing good is considered a tort" and that "[m]erely offering to sell an infringing good to [a] Missourian constitutes the commission of a tort in Missouri and satisfies the Missouri Long Arm Statute." *Id.* at 5. Plaintiff further asserts that Defendant's argument is not supported by law because the cases cited by Defendant have either been overturned or are factually distinguishable from the instant case. Specifically, Plaintiff stresses that Defendant Zazzle has a "fully interactive website . . . which allows full internet commerce and sales to be made" "in Missouri and elsewhere," and that the cases supporting Defendant's argument are based on collateral estoppel. *Id.* at 7. Plaintiff argues that because Defendant operates an interactive website from which it sells goods into Missouri, and from which it both offered and sold a trademark infringing good, and because trademark is tortious in nature, that Defendant has "strong and extensive contacts with Missouri." *Id.* at 8-9. Plaintiff also argues that its status as a "small Missouri LLC" and the availability and convenience of electronic filing should weigh on the court's assessment of whether it would be proper to exercise personal jurisdiction over Defendant in the instant action. Plaintiff requests leave to conduct limited jurisdictional discovery regarding the operation of Defendant's website and Defendant's sales into Missouri, and requests that the court transfer this case to "a

California District Court with personal jurisdiction" in the event that this court is unable to exercise personal jurisdiction over Defendant. [Doc. 1 at 1.]

In its reply, Defendant reiterates that the residence of Plaintiff or that of Plaintiff's counsel do not give rise to personal jurisdiction and that the law does not support an application of specific personal jurisdiction as expansive as set forth in Plaintiff's argument. [Doc. 18 at 3.] Defendant likewise contends that the operation of its website and sales of other goods into Missouri are irrelevant to establishing specific personal jurisdiction because it "cannot be said to have purposefully directed its activities into every state from which the website may be accessed[,]" and to exercise jurisdiction under those circumstances "would offend traditional notions of fair play and substantial justice." *Id.* at 3-4. Defendant further avers that the single sale of an allegedly trademark infringing good is insufficient as a basis for specific personal jurisdiction where the transaction in question was made by Plaintiff or Plaintiff's affiliate because the purchaser could not have been confused about the item's source and therefore the transaction could not be said to relate to a claim of trademark infringement. *Id.* at 7. Defendant asserts that there is no factual basis for the court to find that the sale is a genuine forum contact that relates to Plaintiff's claims because Plaintiff has not alleged that the sale was the result of confusion by the buyer nor presented any evidence supporting the same. *Id.* at 8. To permit Plaintiff to bring the infringing good into the forum of its choosing in order to hale Defendant into a distant forum, Defendant asserts, would subvert traditional notions of fair play and substantial justice. *Id.*

A.    Missouri's Long-Arm Statute

The court examines whether Defendant's conduct satisfies the Missouri long-arm statute before evaluating whether Defendant has sufficient minimum contacts with Missouri comporting with due process. *See Bryant v. Smith Interior Design Grp., Inc.*, 310 S.W.3d 227, 231 (Mo. 2010)

(en banc) (citing *Conway v. Royalite Plastics, Ltd.*, 12 S.W.3d 314, 318 (Mo. 2000) (en banc) (per curiam)). "The reach of Missouri's long arm statute is a question of Missouri law. Accordingly, the Court must accept the interpretation given the statute by the Missouri Supreme Court." *Arnold v. AT&T, Inc.*, 874 F. Supp. 2d 825, 830 (E.D. Mo. 2012) (citing *Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 311 (8th Cir. 1982)). In relevant part, Missouri's long-arm statute authorizes jurisdiction over:

> 1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any such acts:
> (1) The transaction of any business within this state;
> . . .
> (3) The commission of any tortious act within this state;
> . . .

Mo. Rev. Stat. § 506.500. To show that an action arose out of activity covered by Missouri's long-arm statute, "a plaintiff must make a prima facie showing of the validity of its claim. A plaintiff need not prove all of the elements that form the basis of the defendant's liability, but must show that acts contemplated by the statute took place." *Conway*, 12 S.W.3d at 318 (internal citations omitted).

Plaintiff asserts that this court may exercise personal jurisdiction over Defendant under the Missouri long-arm statute and the due process clause because "Defendant has committed torts or trademark infringement in the State of Missouri, . . . has sent trademark infringing goods into the State of Missouri, . . . and . . . regularly transacts and conducts business within Missouri." [Doc. 1 ¶ 7.] Plaintiff has not put forth any arguments specific to the Missouri long-arm statute, but the court interprets Plaintiff's claims to allege that the exercise of jurisdiction is proper under the long-arm statute under provisions (1) and (3) as examined below.

7

i.   <u>Transaction of Business</u>

The Missouri long-arm statute authorizes the exercise of personal jurisdiction over an entity that transacts business in Missouri when the cause of action arises from such transaction. Mo. Rev. Stat. § 506.500.1(1). This provision is to be construed broadly, and a single transaction may serve as the basis for the exercise of personal jurisdiction over a nonresident defendant. *See Capitol Indem. Corp. v. Citizens Nat'l Bank of Fort Scott*, 8 S.W.3d 893, 903-04 (Mo. Ct. App. 2000) (citing *Gaertner*, 677 S.W.2d at 327).

Plaintiff has alleged that Defendant made at least one transaction between the Defendant an individual in Clayton, Missouri, for the purchase of an allegedly trademark-infringing t-shirt. [Doc. 1 ¶ 12.] Plaintiff also provided a photographs of the package sent by Defendant and received in Missouri [Doc. 1-1] and of the allegedly trademark-infringing product [Doc. 1-2], a screen capture of Defendant's website displaying the product for sale [Doc. 1-3], and a copy of the transaction receipt [Doc. 1-4.] Defendant does not dispute that this transaction occurred and has not put forth any argument that its conduct falls outside the reach of the long-arm statute. Viewed in the light most favorable to Plaintiff, and construing "the transaction of business" broadly, this court finds that Defendant's sale of a t-shirt to an individual in Missouri is considered the transaction of business in Missouri for the purpose of meeting the requirement of the long-arm statute.

ii.   <u>Commission of a Tortious Act Within the State</u>

The Missouri long-arm statute authorizes the exercise of personal jurisdiction over a defendant who commits a tort within the state. Mo. Rev. Stat. § 506.500.1(3). "A single tortious act is sufficient to support personal jurisdiction." *State ex rel. William Ranni Assocs., Inc. v. Hartenbach*, 742 S.W.2d 134, 139 (Mo. 1980) (en banc) (citing *State ex rel. Caine v. Richardson*,

600 S.W.2d 82, 85 (Mo. App. 1980)). This provision of the long-arm statute is also broadly construed. *See Bryant*, 310 S.W.3d at 232. If the tortious act is committed outside Missouri, the long-arm statute will apply so long as the act "produces actionable consequences" in Missouri. *Noble v. Shawnee Gun Shop Inc.*, 316 S.W.3d 364, 371 (Mo. Ct. App. 2010) (citing *Capitol Indem. Corp.*, 8 S.W.3d at 903). "A party relying on a defendant's commission of a tort within [Missouri] to invoke long arm jurisdiction must make a prima facie showing of the validity of his claim." *William Ranni Assocs., Inc.*, 742 S.W.2d at 139 (citing *State ex rel. Deere and Co. v. Pinnell*, 454 S.W.2d 889, 892 (Mo. 1970) (en banc)). To establish a prima facie tort case, Plaintiff must allege facts from which the elements of a tort claim are satisfied. *See Dakota Indus. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1389, 1391 (8th Cir. 1991).

"This court has held that infringing upon a trademark is grounds for personal jurisdiction under 'the commission of a tortious act' provision of Missouri's long-arm statute." *Uncle Sam's Safari Outfitters, Inc. v. Uncle Sam's Army Navy Outfitters-Manhattan, Inc.*, 96 F. Supp. 2d 919, 921 (E.D. Mo. 2000) (citing *Maritz v. Cybergold, Inc.*, 947 F. Supp. 1328, 1331 (E.D. Mo. 1996)). The Lanham Act provides that:

(1) Any person who shall, without the consent of the registrant—

   (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
   (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
   shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to

9

recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114.

In the instant case, Plaintiff alleges that, by using its website to advertise and sell clothing that infringed on Plaintiff's trademark, Defendant committed an intentional tort with actionable consequences in Missouri that fall within the purview of the long-arm statute. Plaintiff's exhibits show that an allegedly trademark-infringing shirt was ordered on Defendant's website and delivered to a recipient in Missouri. Defendant does not deny that the allegedly infringing goods were listed and sold on its website, but states that only one sale occurred and that the goods were removed from advertising and sale upon notice by Plaintiff. Viewing the facts in the light most favorable to Plaintiff for the purpose of this analysis, the court finds that Plaintiff has made the requisite prima facie showing that Defendant committed a tortious act with actionable consequences which falls under scope of the Missouri long-arm statute.

B.    Due Process

Next, the court turns to an analysis of Defendant's contacts with Missouri. The exercise of jurisdiction over an out-of-state defendant meets the requirements of due process where there the defendant has "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts are evaluated under two theories: general jurisdiction for a defendant with "continuous and systematic" contacts with the forum state, and specific jurisdiction for other defendants. *See Dever*, 380 F.3d at 1073. Under either theory, there must be "'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the

benefits and protections of its laws.'" *Id.* quoting (*Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the "random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "The proper question is not where plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 1125.

The Eighth Circuit employs a five-factor test to analyze minimum contacts which considers: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (citing *Land-O-Nod Co. v. Bassett Furniture Indus.*, 708 F.2d 1338, 1340 (8th Cir. 1983)). The court gives "primary importance" to the first three factors. *Id.* The primary factors relate to the Defendant's contacts with the forum state. *Lakin v. Prudential Sec.*, 348 F.3d 704, 712 (8th Cir. 2003)). The secondary factors relate to the court's consideration of traditional notions of fair play and substantial justice in its reasonableness analysis. *Id.* at n.11.

   i.   General Jurisdiction

"The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). A corporation can also be subject to general jurisdiction in a forum where its "affiliations with the

State are so 'continuous and systematic' as to render them essentially at home in the forum State. *Goodyear*, 564 U.S. at 919 (citing *Int'l Shoe*, 326 U.S. at 317).

Plaintiff states that Defendant "is a California corporation with its principal place of business in California" and neither alleges facts supporting general jurisdiction nor explicitly argues that this court may exercise general jurisdiction over Defendant. [Doc. 1 at ¶ 3.] Defendant operates a website, zazzle.com, which is accessible in any internet-connected location, and while Plaintiff argues that Defendant has "strong and extensive" contacts with Missouri, its arguments regarding Defendant's contacts with the States do not show that they are continuous or systematic in nature and fail to provide a basis for general jurisdiction. Those same arguments are discussed with respect to specific personal jurisdiction below.

ii.     Specific Jurisdiction

The exercise of specific jurisdiction "is warranted when the defendant purposely directs its activities at the forum state and the litigation 'result[s] from injuries . . . relating to [the defendant's activities [in the forum state.]'" *Myers v Casino Queen, Inc.*, 689 F.3d 904, 912-13 (8th Cir. 2012) (quoting *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008)). The court must also consider the totality of circumstances in its analysis of specific jurisdiction. *See id.* at 913. When evaluating minimum contacts under a theory of specific personal jurisdiction, the Eighth Circuit applies the test articulated in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997) to examine the sufficiency of internet contacts. *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010) (citing *Lakin*, 348 F.3d at 707). "[U]nder *Zippo*, whether specific personal jurisdiction could be conferred on the basis of an interactive website depends not on just the nature of the website but also on the evidence that individuals in the forum state accessed the website in doing business with the defendant." *Id.* at 797 (citing *Zippo*, 952 F. Supp. 1125-26). The "sliding scale" approach of

*Zippo* deems the exercise of jurisdiction appropriate in the case of highly interactive websites where the Defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the internet, and inappropriate in the case of passive website which merely makes information available to interested viewers. *Zippo*, 952 F. Supp. at 1124. The exercise of jurisdiction for cases in the middle of the scale is "determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.*

When an intentional tort is alleged, the court must also consider the "effects test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984). *See Dakota Indus.*, 946 F.2d at 1391 (citing *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986) ("within the rubric of 'purposeful availment' the Court has allowed the exercise of jurisdiction over a defendant whose only 'contact' with the forum state is the 'purposeful direction' of a *foreign* act having *effect* in the forum state.")). The *Calder* test provides that a defendant's tortious act(s) can serve as a basis for personal jurisdiction if the Plaintiff can make a prima facie case that the Defendant's acts "(1) were intentional; (2) were uniquely or expressly aimed at the forum state; and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—in the forum state." *Johnson*, 614 F.3d at 796 (internal citation omitted). However, the *Calder* test is not determinative and is merely an additional factor to consider in the minimum contacts analysis; absent additional contacts, "mere effects in the forum state are insufficient to confer personal jurisdiction." *Id.* (citing *Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992) (per curiam)).

Plaintiff argues that due process is satisfied because Defendant has strong and extensive contacts with Missouri. In support of its argument, Plaintiff alleges that Defendant uses a website,

available to individuals in Missouri and elsewhere, to sell its goods and that it advertised its goods in Missouri as a result of that availability. [Doc. 1 ¶¶ 11-12.] Plaintiff also argues that both the offering and actual sale of allegedly trademark infringing goods satisfies the minimum contacts necessary for this court to exercise personal jurisdiction over Defendant, [Doc. 14 at 4-6.], and filed exhibits which show that a t-shirt displaying the contested mark was purchased and received by an individual in Missouri  [Docs. 1-1, 1-2, 1-3, 1-4]. Plaintiff alleges that Defendant knew of its mark, intentionally misled customers and potential customers by using its mark, and attempted to trade on the goodwill of Plaintiff. [Doc. 1 ¶¶ 11-12, 16, 26, 28.] As a result of Defendant's sale and advertisement of the alleged infringing goods, Plaintiff asserts that it suffered irreparable damage to its brand because customers and potential customers may have mistaken Defendant's business and products with that of Plaintiff's. *Id.* at ¶¶ 16-18, 26-27.

Defendant acknowledges that it owns the website zazzle.com, which allows third-party users to create, buy, and sell customized merchandise online through Defendant's e-commerce services. [Doc. 9 at 2.] Zazzle.com is equally accessible to individuals in Missouri and elsewhere. [Doc. 8-1 at 1.] Defendant provides information about intellectual property and guidelines to its users aimed at preventing infringing material from being uploaded, and users of its website must warrant that they are the creators and owners, or have the lawful right to use content that they upload to Defendant's website. *Id.* ¶¶ 4-5. Jennifer McNulty-Squiers, director of customer care for Defendant, testified by declaration that Zazzle received a cease and desist letter from Plaintiff in July 2019, notifying it of the products that allegedly infringed on BASIC's trademark, that Zazzle removed 28 allegedly infringing products from its website, and deactivated seller stores that offered those products. [Doc. 8-1 ¶ 6.] McNulty-Squiers also testified that upon review of Defendant's records, only one sale of an allegedly infringing product had occurred on November

28, 2019; the same sale which Plaintiff relies on to support its argument that Defendant should be subject to this court's jurisdiction. *Id.* ¶ 7. Jamie Otto, Defendant's counsel of record, submitted a declaration stating that Plaintiff's counsel informed him that the sole purchase at issue was made by Plaintiff's mother. [Doc. 8-2 at 3.]

      a.     The Nature and Quality of Contacts

Plaintiff alleges that Defendant sells goods into Missouri from its website. [Docs. 1 ¶ 12, 14 at 8.] However, the mere fact that Defendant's website is accessible in Missouri and that it may advertise and sell its products to residents of Missouri is, alone, insufficient to support a finding of specific jurisdiction. Plaintiff's reliance on *Maritz, Inc. v. Cybergold, Inc.*, 947 F. Sup. 12328 (E.D. Mo. 1996) is misplaced. As Defendant contends, *Maritz* was decided before the Eight Circuit explicitly adopted the *Zippo* test when evaluating the sufficiency of internet contacts for personal jurisdiction. On the sliding scale of the *Zippo* test, Defendant's website is closer to a more-interactive site because it allows direct purchases to be made. However, specific jurisdiction is only "permissible if a defendant purposely directs its activities at residents of the forum state 'and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Myers*, 689 F.3d at 912 (quoting *Burger King*, 471 U.S. at 472). Even accepting Plaintiff's allegations as true, the availability of Defendant's website in Missouri alone does not show that Defendant targeted Missouri residents in any way and the record does not reflect that the Defendant purposely directed its activities at Missouri. *Cf. id.* at 908 (noting that Casino Queen was physically located in a metropolitan area which included Missouri and that it actively pursued marketing campaigns directed at Missouri residents through, among other methods, direct mailing in Missouri and through print, radio, and television media in Missouri). Plaintiff has not made more than bare

allegations that Defendant has contacts with Missouri through online sales and has not alleged that Defendant purposefully directed its activities at Missouri.

Plaintiff has shown that Defendant made an allegedly trademark infringing good available for purchase on its website and actually shipped one such good into Missouri. However, Defendant alleges that purchase—the only contact with Missouri that Plaintiff has shown supported by evidence—was made by someone affiliated to Plaintiff [Doc. 8-2]. To be used as the basis for personal jurisdiction, "any sale into the forum must be such that it signals the defendant purposefully availed him-or-herself to the privilege of doing business of the forum and was not merely the result of a unilateral act of a third-party." *Regenexx v. Regenex Health LLC*, 446 F. Supp. 3d 469, 481 (S.D. Iowa 2020) (citing *Burger King*, 471 U.S. at 475)). "Although an internet purchase of goods and delivery of the product to the forum state may establish personal jurisdiction over the defendant, 'plaintiffs are not permitted to "manufacture" personal jurisdiction over defendants by orchestrating an in-state web-based purchase of their goods.'" *Warren v. Cardoza Publ. Co.*, 2017 U.S. Dist. LEXIS 16128, at *16-17 (E.D. Mo. Feb. 6, 2017) (quoting *Krepps v. Reiner*, 588 F. Supp. 2d 471, 479 (S.D.N.Y. 2008)). As in *Warren*, this court declines to make a determination regarding whether Plaintiff played a role in the web purchase, but looks to Plaintiff to meet its burden to demonstrate that personal jurisdiction exists in this case. *Id.* at *17.

Plaintiff's Response to Defendant's Motion to Dismiss did not address Defendant's testimony that Plaintiff's affiliate purchased the allegedly infringing good from Defendant's website in order to manufacture personal jurisdiction, and Plaintiff has not put forth any further evidence regarding Defendant's other contacts with Missouri. Plaintiff has not met its burden to show facts proving jurisdiction based on the nature of Defendant's contacts with Missouri, and this factor strongly favors Defendant.

16

b.     The Quantity of Contacts

Courts in Missouri and in the Eighth Circuit have consistently held that, without more, an extraterritorial act with consequences in Missouri is insufficient to support the exercise of personal jurisdiction over a non-resident defendant without violating due process. *Peabody Holding Co. v. Costain Grp. PLC*, 808 F. Supp. 1425, 1438 (E.D. Mo. 1992) (collecting cases). In cases where the court found personal jurisdiction based on "one or only a very few sales by the defendant to customers in the forum state, jurisdiction was not based on contact manufactured by the plaintiff or anyone affiliated with the plaintiff, and the circumstances showed more than the single sale as the basis for the exercise of personal jurisdiction." *Foreign Candy Co. v. Tropical Paradise, Inc.*, 950 F. Supp. 2d 1017, 1032 n.5 (N.D. Iowa 2013). As discussed above, while Plaintiff has shown that a single sale from Defendant's website was shipped to Missouri, Plaintiff has not refuted Defendant's claim that Plaintiff's manufactured that contact through its affiliate. Moreover, Plaintiff has made only bare allegations that Defendant has had other contacts with Missouri through its website and has not specifically alleged that Defendant purposefully directed its activities through any other method such as undertaking marketing campaigns specifically targeting Missouri residents.

Viewing the facts in the light most favorable to Plaintiff, Plaintiff has only shown that a single contact occurred between Defendant and the state of Missouri. That contact alone does not support subjecting Defendant to jurisdiction in this forum, and Plaintiff has not alleged or proved other supporting circumstances. Therefore, the second factor also weighs in favor of Defendant and against the exercise of personal jurisdiction over Defendant in this forum.

c.     The Relationship of the Contacts with the Cause of Action

The court must consider the relationship of the Defendant's contacts with the forum state with the cause of action for the purpose of distinguishing between specific and general jurisdiction and examining whether totality of circumstances supports the exercise of personal jurisdiction over Defendant. *Myers*, 689 F.3d at 911-914. As in *Myers,* Plaintiff does not assert that Defendant should be subject to general jurisdiction, so this court's inquiry is limited to that of specific personal jurisdiction. The exercise of specific jurisdiction over a defendant is consistent with traditional notions of fair play and substantial justice where the defendant purposely directs its activities at the forum state by actively soliciting and targeting residents of the forum state, among other things. *See id.* at 913. Defendant argues that, as a print-on-demand business, Plaintiff "induced Zazzle to manufacture and ship a good that would not otherwise have existed" and that "it would defy basic principles of equity and fairness to permit such a plaintiff to assert claims based on any resulting infringement." [Doc. 14 at 9.] Simply stated, Plaintiff alleges that Defendant sold a product which infringes upon its good, and that contact is the basis for its cause of action. Despite the contact's relevance to Plaintiff's cause of action, it is not a pertinent contact made by Defendant.

With respect to Plaintiff's allegation that Defendant generally advertises and sells goods to residents of Missouri, Plaintiff has not argued that those contacts are related to its cause of action. With respect to the remaining contact, Defendant's sale of an allegedly infringing good to a resident of Missouri, Plaintiff's silence in response to Defendant's testimony regarding the origination of that sale is insufficient to meet its burden to show that the third factor weighs in favor of the exercise of personal jurisdiction over Defendant in this forum.

     d.     Interest and Convenience of the Forum

The interest of the forum state and convenience of the forum to the parties relates to the court's analysis of reasonableness and its further consideration of the traditional notions of fair play and substantial justice. *Lakin*, 348 F.3d at 712 n.11. The fourth factor weighs slightly in favor of exercising jurisdiction over defendant. *K-V Pharm.*, 648 F.3d at 595 ("Missouri obviously has an interest in providing a forum for resident corporations."). The fifth factor is neutral because a trial in this forum is likely to be just as inconvenient for Defendant as a trial in an alternate forum would be for Plaintiff. *See id.* Given the primary importance of the first three factors, the slight weight of the fourth factor and the neutral weight of the fifth factors are insufficient to counter this court's assessment that there are insufficient minimum contacts to exercise personal jurisdiction over Defendant without violating due process.

e.      Effects in this Forum

The court also considers the *Calder* effects-test as an additional factor in its minimum contacts analysis when an intentional tort is alleged. An assessment supporting the exercise of personal jurisdiction under the effects test would show that Defendant's allegedly tortious act was (1) intentional; (2) uniquely or expressly aimed at the forum state; and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—in the forum state." *Johnson*, 614 F.3d at 796. However, the Eighth Circuit construes the effects test narrowly, and has held that "absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction. *Id.* at 797. As such, the *Calder* factor do not alter this court's assessment. For the reasons discussed above, additional contacts are absent, and the court must conclude that it cannot exercise personal jurisdiction over Defendant.

C.      Alternate Relief

Plaintiff's opposition to Defendant's Motion to Dismiss requests leave to conduct limited jurisdictional discovery regarding Defendant's contacts with Missouri and requests that, if Defendant's motion is granted, this matter be transferred to an unspecified district court in California "with personal jurisdiction."

      i.   <u>Leave to Conduct Jurisdictional Discovery</u>

"A court may grant discovery on the issue of personal jurisdiction when jurisdictional facts are unclear from the record and a party demonstrates that it can supplement its jurisdictional allegations through discovery." *Stockell Healthcare Sys. v. CSS Healthcare Techs., Inc.*, 2016 U.S. Dist. LEXIS 90535, at *5 (E.D. Mo. July 13, 2016) (citing *Lakin*, 348 F.3d at 710; *NorthPole US, LLC v. Price*, 2006 U.S. Dist. LEXIS 35377, at *13 (E.D. Mo. May 31, 2006)). "However, when a plaintiff offers only speculation or conclusory allegations about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Id.* (quoting *Viasystems, Inc.*, 646 F.3d at 598) (internal quotations omitted). A court abuses its discretion by dismissing an action without permitting the plaintiff to take some jurisdictional discovery "where the plaintiff offers 'documentary evidence' in support of allegations of personal jurisdiction." *Foreign Candy Co.*, 950 F. Supp. 2d at 1036 (citing *Steinbuch*, 518 F.3d at 589).

Plaintiff requests leave to conduct jurisdictional discovery regarding facts about Defendant's sales to and into Missouri, including how many items, customers, and dollar amounts were involved, how much Defendant made in sales into Missouri in the last five years, whether the website was operated by Defendant, whether Defendant controlled sales from the website, and how payments made on the website were received by Defendant. [Doc. 14 at 1-2.]

Plaintiff has not articulated how its requested discovery would supplement its jurisdictional allegations. As discussed in the preceding sections above, Plaintiff has offered only bare assertions

regarding Defendant's other contacts with Missouri which are not supported by documentary evidence. Furthermore, the discovery sought by Plaintiff would not cure other jurisdictional defects discussed by this court by showing, for instance, that Defendant's activities were purposefully directed at Missouri, or explaining how Defendant's other contacts in Missouri relate to the instant claim. Plaintiff has failed to show that its jurisdictional allegations would be supplemented through discovery. Therefore, Plaintiff's request to conduct additional discovery is denied.

        ii.     <u>Transfer of Venue</u>

Having determined that this court cannot exercise personal jurisdiction over Defendant, this court considers whether transfer would be appropriate. The court may transfer this action under 28 U.S.C. § 1631 "if the interests of justice warrant it and the court to which the case is transferred would have jurisdiction." *Gunn v. United States Dep't of Agric.*, 118 F.3d 1233, 1240 (8th Cir. 1997). For instance, courts have granted transfers to prevent a claim from being time-barred by a statute of limitations. *Id.* Where dismissal, rather than transfer, will not threaten a plaintiff's ability to pursue its claims, dismissal is appropriate. *Regenexx*, 446 F. Supp. 3d at 483.

Defendant asserts that there are no circumstances, including a potential statute of limitations issue, that would prevent Plaintiff from refiling its claim an in appropriate forum, and Plaintiff has not put forth any argument that dismissal, rather than transfer, would prejudice Plaintiff or that its claims may be potentially time-barred. In line with the Eighth Circuit's reasoning in *Gunn*, in finding no interests of justice that require transfer of this case, and no threat to Plaintiff's ability to pursue its claims in the proper venue, this court declines to transfer this action to another court under 28 U.S.C. § 1631.

**IV.    Conclusion**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Zazzle's Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED**. [Doc. 8.]

**IT IS FURTHER ORDERED** that this action is **DISMISSED** for lack of personal jurisdiction.

A separate Judgment will accompany this Memorandum and Order.


_____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 12th  day of April, 2021.